STATE OF NORTH CAROLINA v. GENE EDWARD PIERCE

No. COA98-916

(Filed 6 July 1999)

## 1. Contempt— criminal—no specific findings of misconduct

The trial court did not err by denying defendant's motion to dismiss a contempt citation where the court did not make specific findings of improper conduct before issuing the citation. The trial court judge was not required to make a specific finding of improper conduct because the language of the show cause order referred to punishment, defendant referred to the order as being for criminal contempt, and the order sought punishment for interfering with the administration of justice, a function of criminal contempt; unlike a citation for civil contempt, there is no requirement that the judge make a finding of improper conduct upon the issuance of a criminal contempt citation.

## 2. Evidence— conversations within jury room—admissible in contempt proceeding

The trial court did not err in a criminal contempt proceeding arising from juror misconduct by admitting evidence of conversations which occurred within the jury room. The testimony falls squarely within the exception to N.C.G.S. § 8C-1, Rule 606(b) pertaining to extraneous prejudicial information improperly brought to the jury's attention.

## 3. Contempt— criminal—sufficiency of evidence

The trial court correctly denied defendant's motion to dismiss in a criminal contempt proceeding arising from juror misconduct where defendant argued that the State failed to present sufficient evidence in addition to defendant's own remarks, but ten of the twelve jurors testified that defendant had reported his own investigation of the Breathalyzer machine to them; defendant ate lunch alone on the second day of deliberations, supplying the opportunity to conduct an independent investigation; and defendant only displayed his uncommon familiarity with Breathalyzer machines after lunch on the second day.

Appeal by defendant from judgment dated 17 March 1998 by Judge W. Douglas Albright in Randolph County Superior Court. Heard in the Court of Appeals 20 April 1999.

**STATE v. PIERCE**

[134 N.C. App. 148 (1999)]

*Attorney General Michael F. Easley, by Assistant Attorney General William B. Crumpler, for the State.*

*Moser, Schmidly, Mason & Roose, by Stephen S. Schmidly and Richard G. Roose, for defendant-appellant.*

GREENE, Judge.

Gene Edward Pierce (Defendant) appeals from the trial court's order holding him in criminal contempt of court.

Defendant served as a juror on the criminal case of Freddie Carroll for driving while impaired (DWI) on 2 February 1998. Throughout the trial, and specifically at the conclusion of the trial, the presiding judge, Judge Preston Cornelius (Judge Cornelius), instructed the jury "not to discuss the case with anyone outside the courtroom and . . . not to do any research or investigation on their own."

The jury retired to deliberate on the afternoon of Wednesday, 4 February 1998, and continued its deliberations through the entire next day. At some point during the last day of deliberations, the jury foreperson sent a note to Judge Cornelius reporting the jury's inability to reach a verdict, requesting re-instruction on a specific area of the case, and informing Judge Cornelius that she needed to speak to him about the misconduct of one of the jurors. At 5:34 p.m. on Thursday, 5 February 1998, the foreperson reported that a verdict had been reached on one of the counts and the jury was deadlocked on the other count.

After declaring a mistrial, Judge Cornelius spoke with the jury foreperson about her note regarding juror misconduct. The foreperson informed Judge Cornelius that Defendant told the jurors during deliberation that he had conducted his own investigation contrary to the instruction of Judge Cornelius. After questioning Defendant about the foreperson's comments, Judge Cornelius cited Defendant for contempt and ordered him to appear in criminal court "to show cause, if any there be, why [he] should not be punished for contempt."

Prior to his contempt hearing before Judge W. Douglas Albright (Judge Albright), Defendant moved to dismiss the contempt citation because: (1) "there was no specific finding of improper conduct"; (2) "the admission of the only evidence that the State can offer" would be

STATE v. PIERCE

[134 N.C. App. 148 (1999)]

against public policy and the Rules of Evidence; and (3) "the State is unable to establish the <u>corpus delicti</u> of criminal contempt." In his motion to dismiss, Defendant refers to the contempt citation as a "criminal contempt citation." Also prior to the contempt hearing, Defendant made a motion *in limine* requesting the trial court enter an order "directing that statements made by the jurors during the course of jury deliberation not be offered or admitted into evidence." Both of Defendant's motions were denied.

At Defendant's contempt hearing, the State presented the testimony of ten of the twelve jurors serving with Defendant. Each juror testified that on the second afternoon of deliberations, Defendant reported he had made telephone calls to outside "reliable sources" during lunch, and had received information about the operation of Breathalyzer machines. Defendant went on to inform the other jurors, in detail, precisely how a Breathalyzer operates, telling them that once you blow into the machine, if the machine beeps, then a reading is recorded automatically. He also schooled the jurors about the legal limits for drunk driving and that a police officer easily could "rig" a Breathalyzer to give a false reading. Although the jurors had discussed the Breathalyzer evidence several times throughout their deliberations, Defendant did not display this uncommon familiarity until after lunch on the second day. This information came in the wake of the jury's confusion as to why a reading had not been introduced into evidence, although there was testimony that the Breathalyzer beeped. Several of the jurors testified that Defendant accused the police department and Judge Cornelius of withholding the Breathalyzer evidence from the jury. At the close of the State's evidence, Defendant renewed his motion to dismiss, which again was denied.

Defendant testified in his own defense that he had not conducted his own investigation by telephoning outside sources, but simply "used the wrong words" in explaining his knowledge to the other jurors. Defendant claimed he gained his knowledge of breathalyzers from watching "police programs on television." Defendant also admitted that although he ate lunch with another juror on the first day of deliberations, he ate by himself on the second day. Defendant again renewed his motion to dismiss at the close of all the evidence, which again was denied.

Judge Albright entered an order finding Defendant had "made inquiry about legal alcohol levels and intoxication in North Carolina,

**STATE v. PIERCE**

[134 N.C. App. 148 (1999)]

and other legal aspects regarding the Breathalyzer machine, and the mechanical operation of these machines." Judge Albright further found and concluded that these acts were "in willful disobedience to the lawful directions, instructions, and orders of [Judge Cornelius], all in violation of General Statutes 5A-11(a)(3)." An order was entered adjudging Defendant in "criminal contempt of Court."

The dispositive issues are whether: (I) a trial court must make specific findings of improper conduct when issuing a criminal contempt citation; (II) jurors' testimony regarding the alleged misconduct of a fellow juror is inadmissible in a criminal contempt hearing; and (III) there is substantial independent evidence to corroborate Defendant's alleged statements of misconduct.

I

[1] Defendant contends Judge Albright erred in denying his motion to dismiss because Judge Cornelius failed to make specific findings of improper conduct before issuing the contempt citation. We disagree.

When issuing a criminal contempt citation, the presiding judge need only enter "an order directing the person to appear before a judge . . . and show cause why he should not be held in contempt of court." N.C.G.S. § 5A-15(a) (Supp. 1998). Unlike a citation for *civil* contempt, which requires the judge's order be accompanied by a sworn affidavit and a finding of probable cause, *see* N.C.G.S. § 5A-23(a) (Supp. 1998), there is no requirement that the judge make a finding of improper conduct upon the issuance of a *criminal* contempt citation. *Mather v. Mather*, 70 N.C. App. 106, 108-09, 318 S.E.2d 548, 550 (1984).

In this case, Judge Cornelius's order directed Defendant to appear and show cause why he "should not be punished for contempt." This language has been construed to have reference to criminal contempt. *Rose's Stores v. Tarrytown Center*, 270 N.C. 206, 214, 154 S.E.2d 313, 319 (1967). Indeed, Defendant refers to the order as one for criminal contempt in his own motion to dismiss. Furthermore, the order seeks to punish Defendant for interfering with the administration of justice, a function of criminal contempt, rather than compel obedience to an order entered to benefit a private party, a function of civil contempt. *See id.* Accordingly, Judge Cornelius was not required to make a specific finding of improper conduct, and Judge Albright properly denied Defendant's motion to dismiss.

II

**[2]** Defendant contends Judge Albright erred in allowing "evidence of conversations [occurring] within the confines of the jury deliberation room," as such evidence violates the public policy considerations of Rule 606(b).

Defendant admits, and we agree, that Rule 606 of our Rules of Evidence does not apply in this case because there is no effort to impeach the verdict of the jury. He argues, however, that the same policy considerations are at issue and those considerations would prohibit a fellow juror from testifying about information obtained in the confines of the jury room in a juror contempt proceeding. Assuming the same policy considerations are implicated, an issue we need not decide in this case, Rule 606 has an exception that specifically allows a juror to testify on the question of whether "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror." N.C.G.S. § 8C-1, Rule 606(b) (1992).

In this case, it is undisputed that Judge Cornelius directed the jury not to discuss the case with anyone outside the courtroom and not to conduct their own investigations. Because the jurors' testimony regarding Defendant's statements pertained to whether "extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror," this testimony falls squarely within the exception to Rule 606(b). Thus the policy supporting Rule 606 was not frustrated in this case and we therefore reject Defendant's argument. Accordingly, Judge Albright did not err in denying Defendant's motion *in limine* and his motion to dismiss on this ground.

III

**[3]** Defendant contends his motion to dismiss should have been granted because the State failed to present evidence, in addition to his own alleged statements, to establish the *corpus delicti* of the offense. We disagree.

When the State relies on a defendant's own admission to obtain a conviction, it needs to corroborate the admission with "substantial independent evidence tending to establish [the admission's] trustworthiness, including facts that tend to show the defendant had the opportunity to commit the crime." *State v. Parker*, 315 N.C. 222, 236, 337 S.E.2d 487, 495 (1985). "Substantial evidence is that relevant evi-

SCHNITZLEIN v. HARDEE'S FOOD SYS., INC.

[134 N.C. App. 153 (1999)]

dence which a reasonable mind would find sufficient to support a conclusion." *State v. Carr*, 122 N.C. App. 369, 372, 470 S.E.2d 70, 72 (1996).

In this case, along with the undisputed testimony from ten of the twelve jurors that Defendant reported to them that he had conducted his own investigation of the Breathalyzer machine, the State also presented evidence that: (1) Defendant ate lunch alone on the second day of jury deliberations, thus supplying the opportunity to conduct the independent investigation; and (2) the jury had several discussions about the Breathalyzer evidence before lunch on the second day of deliberations, yet Defendant only displayed his uncommon familiarity of Breathalyzer machines after lunch on the second day. Because a reasonable person could find this evidence sufficient to support the conclusion that Defendant conducted his own investigation into the operation of a Breathalyzer machine, it corroborated Defendant's jury room admissions. The trial court thus correctly denied Defendant's motion to dismiss on this ground.

Affirmed.

Judges MARTIN and McGEE concur.