IN THE COURT OF APPEALS OF NORTH CAROLINA

 No. COA16-318

 Filed: 6 December 2016

Cleveland County, No. 15 CRS 2159

STATE OF NORTH CAROLINA

 v.

BARRY RANDALL REVELS, Defendant.

 Appeal by defendant from order entered 23 September 2015 by Judge Lisa C.

Bell in Cleveland County Superior Court. Heard in the Court of Appeals 7 September

2016.

 Attorney General Roy Cooper, by Special Deputy Attorney General Keith
 Clayton, for the State.

 Amanda S. Zimmer for defendant-appellant.

 ENOCHS, Judge.

 Barry Randall Revels (“Defendant”) appeals from the trial court’s order finding

him in criminal contempt of court. On appeal, Defendant contends that the trial court

erred by (1) finding him in both civil and criminal contempt based on the same

conduct; (2) finding him in criminal contempt of court; (3) relying upon a fatally

defective show cause order thereby depriving it of jurisdiction; and (4) failing to enter

a finding of guilty with regard to its determination that Defendant was in criminal

contempt of court. Defendant also asserts that he received ineffective assistance of

counsel. After careful review, we affirm.

 Factual Background
 STATE V. REVELS

 Opinion of the Court

 RST Global Communications, LLC (“RST”) is a company located in Cleveland

County, North Carolina which is in the business of installing and maintaining fiber

optic networks and offering network communication services to third parties.

Defendant is a 30% member and former head of day-to-day operations of RST.

Defendant ran the company’s daily operations from his home address located at 335

Magness Road in Shelby, North Carolina.

 In early 2014, RST became aware that Defendant was improperly using

company funds from RST’s bank accounts for personal debts and expenditures. As a

result, a meeting of RST’s members was called by RST’s Chief Executive Officer, Dan

Limerick (“Limerick”). A series of unanimous resolutions were approved at the

meeting including that (1) RST operations would be transferred to the company’s

headquarters at 1300 South Dekalb Street in Shelby, North Carolina; (2) Doug Brown

(“Brown”) would assume responsibility for RST’s day-to-day operations; (3) Defendant

would no longer be paid a salary; and (4) all company-issued credit and debit cards

would be turned in and no longer used without the express authorization of RST’s

members.

 Defendant refused to comply with these resolutions and retained RST records,

data, and property at his personal residence. He also continued to communicate with

other business entities on RST’s behalf and refused to turn over his company issued

credit and debit cards.

 -2-
 STATE V. REVELS

 Opinion of the Court

 After several “actions without meetings” issued by Limerick and Brown

demanding that Defendant (1) return items of RST’s property including checkbooks,

credit and debit cards, keys, lock combinations, account login and password

information; (2) have all company mail being sent to his residence rerouted to the

South Dekalb Street Office; and (3) remove himself from all company bank accounts,

Defendant still refused to comply. As a result, RST filed a verified complaint and

motion for a temporary restraining order (“TRO”) against Defendant in Cleveland

County Superior Court on 30 April 2015.

 A hearing on RST’s motion for a TRO was held before the Honorable Forrest

Donald Bridges on 4 May 2015, and on 5 May 2015, Judge Bridges granted RST’s

motion and entered a TRO against Defendant.

 Judge Bridges continued the matter until 6 May 2015 in order to give

Defendant the opportunity to obtain counsel. Defendant did not attend the 6 May

2015 hearing, and the court issued a second TRO on 8 May 2015 incorporating the

terms of the 5 May 2015 TRO and adding several additional provisions thereto.

 At a subsequent hearing on 18 May 2015, RST moved for a preliminary

injunction and submitted the sworn affidavit of Brown delineating Defendant’s

failure to return RST’s property or otherwise cooperate with Judge Bridges’ TRO.

The court entered an order for Defendant to show cause and a preliminary injunction

that same day.

 -3-
 STATE V. REVELS

 Opinion of the Court

 On 8 June 2015, a hearing on the show cause order was held before the

Honorable Lisa C. Bell. At the outset of the proceedings, Judge Bell informed

Defendant that the hearing would determine whether he would be found in criminal

or civil contempt. The case was ultimately continued several times until 23

September 2015.

 At the 23 September 2015 hearing, RST presented evidence that Defendant

had not complied with the TRO or the preliminary injunction. As a result, Judge Bell

found Defendant in both civil and criminal contempt of court and entered

corresponding orders on that same day. On 23 October 2015, Judge Bell entered a

detailed order of criminal and civil contempt laying out findings of fact supporting

her conclusion that Defendant was in both civil and criminal contempt of court.

Defendant gave oral notice of appeal of the 23 September 2015 criminal contempt

order in open court.

 Analysis

I. Finding Both Civil and Criminal Contempt Based Upon the Same Conduct

 Defendant first contends on appeal that the trial court found him to be in both

civil and criminal contempt based upon the same conduct in violation of N.C. Gen.

Stat. § 5A-12(d) (2015) and N.C. Gen. Stat. § 5A-21(c) (2015). We disagree.

 At the outset we note that contempt in this
 jurisdiction may be of two kinds, civil or criminal, although
 we have stated that the demarcation between the two may
 be hazy at best. Criminal contempt is generally applied

 -4-
 STATE V. REVELS

 Opinion of the Court

 where the judgment is in punishment of an act already
 accomplished, tending to interfere with the administration
 of justice. Civil contempt is a term applied where the
 proceeding is had to preserve the rights of private parties
 and to compel obedience to orders and decrees made for the
 benefit of such parties.

 A major factor in determining whether contempt is
 civil or criminal is the purpose for which the power is
 exercised. Where the punishment is to preserve the court’s
 authority and to punish disobedience of its orders, it is
 criminal contempt. Where the purpose is to provide a
 remedy for an injured suitor and to coerce compliance with
 an order, the contempt is civil. The importance in
 distinguishing between criminal and civil contempt lies in
 the difference in procedure, punishment, and right of
 review.

O’Briant v. O’Briant, 313 N.C. 432, 434, 329 S.E.2d 370, 372 (1985) (internal citations

omitted).

 Defendant is correct as a general proposition that a person cannot be found in

both civil and criminal contempt for the same conduct. See N.C. Gen. Stat. § 5A-12(d)

(“A person held in criminal contempt under this Article shall not, for the same

conduct, be found in civil contempt under Article 2 of this Chapter, Civil Contempt.”);

N.C. Gen. Stat. § 5A-21(c) (“A person who is found in civil contempt under this Article

shall not, for the same conduct, be found in criminal contempt under Article 1 of this

Chapter.”). However, where divergent and distinct conduct arising from the same

underlying nucleus of facts would give rise to independent findings of both civil and

criminal contempt, a trial court does not err by finding a person in criminal contempt

 -5-
 STATE V. REVELS

 Opinion of the Court

for certain conduct while also finding him in civil contempt for other separate and

discrete conduct. See, e.g., Adams Creek Assocs. v. Davis, 186 N.C. App. 512, 527, 652

S.E.2d 677, 687 (2007) (“Defendants argue that they were found in civil and criminal

contempt for the same behavior, in violation of N.C. Gen. Stat. § 5A-21(c) and 5A-

23(g), which prohibit finding a defendant in both civil and criminal contempt for the

same behavior. . . . [D]efendants were found in civil contempt for failing to comply

with the court’s 2004 order, and were found in criminal contempt for their testimony

threatening to disobey future orders of the court. Thus, defendants were found in

civil and criminal contempt on the basis of different acts.”).

 Indeed, in Adams Creek Assocs., the defendants were found in criminal

contempt for continuing to trespass upon the plaintiff’s property in defiance of the

trial court’s order. They then testified at trial that they intended to continue to

trespass on the property in the future because they erroneously believed that the

property was theirs. Id. Despite the overlapping nucleus of facts — to wit, trespass

on the plaintiff’s real property — the trial court also found them in civil contempt.

Id. On appeal, the defendants argued “that they were found in civil and criminal

contempt for the same behavior, in violation of N.C. Gen. Stat. § 5A-21(c) and 5A-

23(g), which prohibit finding a defendant in both civil and criminal contempt for the

same behavior.” Id. In rejecting this argument, this Court emphasized that

“defendants were found in civil contempt for failing to comply with the court’s 2004

 -6-
 STATE V. REVELS

 Opinion of the Court

order, and were found in criminal contempt for their testimony threatening to disobey

future orders of the court.” Id. Therefore, both the civil and criminal contempt orders

were based upon the defendants’ trespass on the exact same piece of land, but were

deemed distinguishable based on the diverging conduct and intent of the defendants

— that is the disobedience of a past trial court order on the one hand accounting for

one type of conduct, and the intention to continue to disobey the court’s orders in the

future as a separate type of conduct. Id.

 This is in line with the O’Briant line of cases which emphasize that “ ‘[a] major

factor in determining whether contempt is criminal or civil is the purpose for which

the power is exercised.’ ” Watson v. Watson, 187 N.C. App. 55, 61, 652 S.E.2d 310,

315 (2007) (quoting Bishop v. Bishop, 90 N.C. App. 499, 503, 369 S.E.2d 106, 108

(1988)).

 Criminal contempt is imposed in order to preserve
 the court’s authority and to punish disobedience of its
 orders. Criminal contempt is a crime, and constitutional
 safeguards are triggered accordingly. On the other hand,
 when the court seeks to compel obedience with court
 orders, and a party may avoid the contempt sentence or
 fine by performing the acts required in the court order, the
 contempt is best characterized as civil.

Id. (internal citations omitted).

 In the present case, the trial court’s 23 October 2015 order of criminal and civil

contempt was divided into two parts. In the first section, the trial court, applying the

beyond a reasonable doubt standard, found that Defendant failed to (1) cause RST’s

 -7-
 STATE V. REVELS

 Opinion of the Court

mail to be delivered to the Dekalb Street address in violation of the TRO; (2) deliver

all of RST’s equipment to the Dekalb Street address including but not limited to at

least two phones as required by the TRO; (3) provide account login and password

information in violation of the TRO; and (4) relinquish RST’s credit and debit cards

in violation of the TRO and preliminary injunction.

 In the second section of the order, the trial court, applying the greater weight

of the evidence standard, found Defendant in civil contempt for (1) instructing third-

parties to break RST’s fiber optic cables and not to repair them until he got a new

contract; (2) using RST’s equipment and business connections to continue to

appropriate business opportunities for his newly formed business; and (3) retaining

RST’s equipment detailed in the TRO and preliminary injunction.

 Here, it is readily apparent that, in accord with Adams Creek Assocs., the trial

court found Defendant in civil contempt based on his continued conduct in violation

of the TRO and preliminarily injunction in attempting to frustrate RST’s business

interests while simultaneously attempting to further his own at their expense, and

found him in criminal contempt based upon his past conduct, that is, his refusal to

obey the trial court’s TRO and preliminary injunction in failing to adhere to their

terms including the return of various company assets of RST. As a result, the trial

court did not find Defendant in civil and criminal contempt for the same conduct, but

 -8-
 STATE V. REVELS

 Opinion of the Court

instead for distinctly separate and discrete conduct based on a partially overlapping

nucleus of facts. Therefore, Defendant’s argument on this issue is overruled.

II. Criminal Contempt

 In a related argument, Defendant asserts that the trial court erred in finding

him in criminal contempt because the punishment imposed upon him was civil in

nature as opposed to the type of punitive punishment reserved for those found to be

in criminal contempt. We disagree.

 As noted above, the trial court is fully authorized to impose both civil and

criminal contempt in the same proceeding as long as they are not imposed for the

same conduct. Therefore, the trial court was within its authority to impose upon

Defendant both (1) criminal contempt to punish Defendant’s past conduct in failing

to adhere to the TRO and preliminary injunction; and (2) civil contempt designed to

compel Defendant to comply with its directives.

 In the present case, the trial court ordered, in pertinent part, as follows:

 Effective immediately, Defendant will serve a 7-day active
 sentence in the Cleveland County jail of a total sentence of
 30 days in jail for his willful criminal contempt of this
 Court. The remaining 23 days will be suspended, and
 Defendant will be on unsupervised probation for a period
 of 12 months.

This sentence was clearly punitive in nature and was imposed as punishment for

Defendant’s criminal contempt of court.

 -9-
 STATE V. REVELS

 Opinion of the Court

 The trial court then further separately ordered the following: “Defendant will

be and is indefinitely incarcerated in the Cleveland County jail for his willful civil

contempt of this Court, which will begin immediately upon the conclusion, release, or

other cessation of his 7-day active sentence until he complies with the following purge

conditions . . . .” The trial court then imposed conditions that Defendant return RST’s

assets, complete a change of address causing RST’s business mail to be sent to the

Dekalb Street address instead of to his house, and surrender his company debit and

credit cards to RST.

 The latter portion of the trial court’s order clearly imposes conditions for

Defendant’s release from imprisonment after the conclusion of his criminal contempt

sentence. The punishment is indefinite and remedial in nature and designed to

ensure compliance with the court’s orders as opposed to a punishment for past

violations of the TRO and preliminary injunction. As a result, both the sentence

imposed for criminal contempt and the sentence imposed for civil contempt are

consecutive in nature and do not overlap in the manner Defendant suggests.

Consequently, Defendant’s argument on this issue is without merit.

III. Jurisdiction

 Defendant next argues that the trial court’s show cause order failed to

adequately allege that he was subject to being found in criminal contempt of court

 - 10 -
 STATE V. REVELS

 Opinion of the Court

with sufficient specificity so as to confer jurisdiction upon the trial court. We

disagree.

 N.C. Gen. Stat. § 5A-13(b) (2015) provides that “[a]ny criminal contempt other

than direct criminal contempt is indirect criminal contempt and is punishable only

after proceedings in accordance with the procedure required by G.S. 5A-15.” N.C.

Gen. Stat. § 5A-15(a) (2015) in turn provides, in pertinent part, that “[w]hen a judicial

official chooses not to proceed summarily against a person charged with direct

criminal contempt or when he may not proceed summarily, he may proceed by an

order directing the person to appear before a judge at a reasonable time specified in

the order and show cause why he should not be held in contempt of court.” See State

v. Coleman, 188 N.C. App. 144, 149, 655 S.E.2d 450, 453 (2008) (“For indirect criminal

contempt proceedings in which a trial court is not allowed to proceed summarily, a

show cause order is analogous to a criminal indictment and is the means by which

the defendant is afforded the constitutional safeguard of notice.” (internal footnote

omitted)). That is precisely what occurred in the present case.

 Moreover, our caselaw has consistently held that a show cause order is

sufficient to confer jurisdiction on a trial court for finding a defendant in indirect

criminal contempt where it incorporates by reference a prior court order that a

defendant has failed to comply with.

 When issuing a criminal contempt citation, the
 presiding judge need only enter an order directing the

 - 11 -
 STATE V. REVELS

 Opinion of the Court

 person to appear before a judge and show cause why he
 should not be held in contempt of court. Unlike a citation
 for civil contempt, which requires the judge’s order be
 accompanied by a sworn affidavit and a finding of probable
 cause, there is no requirement that the judge make a
 finding of improper conduct upon the issuance of a criminal
 contempt citation.

 In this case, [the trial court judge’s] order directed
 [d]efendant to appear and show cause why he should not
 be punished for contempt. This language has been
 construed to have reference to criminal contempt. Indeed,
 [d]efendant refers to the order as one for criminal contempt
 in his own motion to dismiss. Furthermore, the order seeks
 to punish [d]efendant for interfering with the
 administration of justice, a function of criminal contempt,
 rather than compel obedience to an order entered to benefit
 a private party, a function of civil contempt. Accordingly,
 [the judge] was not required to make a specific finding of
 improper conduct, and [the court] properly denied
 [d]efendant’s motion to dismiss.

State v. Pierce, 134 N.C. App. 148, 151, 516 S.E.2d 916, 919 (1999) (internal citations,

quotation marks, and ellipses omitted); see also Bennett v. Bennett, 71 N.C. App. 424,

322 S.E.2d 439 (1984) (outstanding show cause order upon which no action had been

taken satisfied statutory requirement of N.C. Gen. Stat. § 5A-15 that a contempt

hearing be held on a show cause order).

 Consequently, because the trial court entered a show cause order requiring

Defendant to appear in court and explain why he had failed to comply with the TRO

and preliminary injunction, it was fully authorized to find him in criminal contempt

 - 12 -
 STATE V. REVELS

 Opinion of the Court

of court. Defendant’s argument that the trial court never gained jurisdiction over the

criminal contempt proceedings should, as a result, be overruled.1

IV. Guilty Mandate

 Defendant next argues that because the trial court never expressly used the

term “guilty” in finding him in contempt of court, his conviction must be overturned.

We disagree.

 It is apparent in the present case that the trial court found Defendant guilty

of both civil and criminal contempt. Its order clearly stated that “Defendant is in civil

and criminal contempt of this Court[.]” The trial court based this conclusion upon

application of the beyond a reasonable doubt standard to the evidence before it, which

is supported by the record.

 Our Supreme Court has held that “insubstantial technical errors which could

not have affected the result will not be held prejudicial. The judge’s words may not

be detached from the context and the incidents of the trial and then critically

examined for an interpretation from which erroneous expressions may be inferred.”

State v. Alexander, 279 N.C. 527, 538, 184 S.E.2d 274, 282 (1971) (internal citation

omitted); see State v. Keyes, 56 N.C. App. 75, 79, 286 S.E.2d 861, 863-64 (1982) (“Mere

 1Defendant also makes a brief argument that we should impute the requirements for a larceny
indictment onto a show cause order alleging criminal contempt. Defendant has cited to no case law in
support of this proposition and our research has revealed none. Consequently, this argument is
without merit.

 - 13 -
 STATE V. REVELS

 Opinion of the Court

technical error is not sufficient to require the granting of a new trial. The error must

be so prejudicial as to affect the result.”).

 Defendant’s attempt to rely on this Court’s decision in State v. Phillips, 230

N.C. App. 382, 750 S.E.2d 43 (2013), in arguing that the trial court’s failure to state

Defendant was “guilty” is misplaced. In that case, this Court found that the trial

court’s order was fatally defective because the trial court had failed to indicate that

it had applied the beyond a reasonable doubt standard, thereby precluding this Court

on appeal from being able to discern that it had actually done so in accordance with

the law. Id. at 385, 750 S.E.2d at 45. Such is not the case here where the trial court

— as set forth in the plain language of its order — correctly applied the beyond a

reasonable doubt standard to the evidence before it and unambiguously determined

that Defendant was, in fact, in criminal contempt of court. Defendant was then

sentenced accordingly.

 The fact that the trial court did not use the talismanic term “guilty” here does

not affect the outcome of Defendant being found in criminal contempt of court.

Defendant cannot show that “but for” the omission of such language, the trial court

would have reached a contrary result. Consequently, Defendant cannot establish

that he was prejudiced and his argument on this issue is overruled.

V. Ineffective Assistance of Counsel

 - 14 -
 STATE V. REVELS

 Opinion of the Court

 Defendant’s final argument on appeal is that he received ineffective assistance

of counsel due to his trial counsel’s failure to object to the criminal contempt

proceedings. Defendant’s argument is without merit.

 In order to prevail on an ineffective assistance of counsel
 claim, a defendant must show that (1) counsel’s
 performance was deficient and (2) the deficient
 performance prejudiced the defense.

 Deficient performance may be established by
 showing that counsel’s representation fell
 below an objective standard of
 reasonableness. Generally, to establish
 prejudice, a defendant must show that there
 is a reasonable probability that, but for
 counsel’s unprofessional errors, the result of
 the proceeding would have been different. A
 reasonable probability is a probability
 sufficient to undermine confidence in the
 outcome.

State v. Edgar, ___ N.C. App. ___, ___, 777 S.E.2d 766, 770-71 (2015) (internal

citations and quotation marks omitted) (quoting State v. Allen, 360 N.C. 297, 316, 626

S.E.2d 271, 286 (2006)).

 Because, for the reasons stated above, Defendant cannot show that the trial

court erred procedurally in finding him in civil and criminal contempt of court, it

logically follows that he cannot demonstrate that his trial counsel’s failure to object

to the proceedings affected the outcome. Therefore, he cannot successfully establish

an ineffective assistance of counsel claim.

 Conclusion

 - 15 -
 STATE V. REVELS

 Opinion of the Court

 For the reasons stated above, we affirm the trial court’s criminal contempt

order.

 AFFIRMED.

 Judge ZACHARY concurs.

 Judge ELMORE dissents in a separate opinion.

 - 16 -
 No. COA16-318 – State v. Revels

 ELMORE, Judge, dissenting.

 I respectfully disagree with the majority’s conclusion that the trial court found

defendant in both civil and criminal contempt for “distinctly separate and discrete

conduct.” Defendant’s same conduct—failing to return company property in willful

violation of its orders—underlies both contempt adjudications, in direct violation of

our general statutes. Accordingly, I respectfully dissent.

 Because “ ‘[d]efendant alleges a violation of a statutory mandate, and ‘[a]lleged

statutory errors are questions of law[,]’ ” State v. Reeves, 218 N.C. App. 570, 576, 721

S.E.2d 317, 322 (2012) (quoting State v. Mackey, 209 N.C. App. 116, 120, 708 S.E.2d

719, 721 (2011)), we employ de novo review of defendant’s challenge. Id.

 Chapter 5A of our general statutes grants a court the power to punish a party

for certain conduct by finding him or her in contempt of court, which comes in two

forms: criminal contempt, governed by Article 1, see N.C. Gen. Stat. §§ 5A-11 to -17

(2105), and civil contempt, governed by Article 2, see N.C. Gen. Stat. §§ 5A-21 to -25

(2105). Under Article 1, N.C. Gen. Stat. § 5A-11(a)(1)–(10) enumerates conduct

constituting criminal contempt, including “[w]illful disobedience of . . . a court’s . . .

order.” Id. § 5A-11(a)(3). Under Article 2, N.C. Gen. Stat. § 5A-21(a) describes

conduct constituting civil contempt and provides, in pertinent part:

 (a) Failure to comply with an order of a court is a
 continuing civil contempt as long as:

 (1) The order remains in force;
 STATE V. REVELS

 Elmore, J., dissenting

 (2) The purpose of the order may still be served by
 compliance with the order;

 (2a) The noncompliance by the person to whom the
 order is directed is willful; and

 (3) The person to whom the order is directed is able
 to comply with the order or is able to take reasonable
 measures that would enable the person to comply
 with the order.

 Generally, a trial court imposes criminal contempt to “ ‘punish[ ] for acts

already committed that have impeded the administration of justice,’ ” and civil

contempt “ ‘to coerce disobedient defendants into complying with orders of court.’ ”

Ruth v. Ruth, 158 N.C. App. 123, 126, 579 S.E.2d 909, 912 (2003) (quoting Brower v.

Brower, 70 N.C. App. 131, 133, 318 S.E.2d 542, 544 (1984)). However, by statute, a

court cannot punish a party twice by imposing both criminal and civil contempt for

the same conduct. Compare N.C. Gen. Stat. § 5A-12(d) (“A person held in criminal

contempt under this Article shall not, for the same conduct, be found in civil contempt

under Article 2 of this Chapter, Civil Contempt.” (emphasis added)), with N.C. Gen.

Stat. § 5A-21(c) (“A person who is found in civil contempt under this Article shall not,

for the same conduct, be found in criminal contempt under Article 1 of this Chapter.”

(emphasis added)). Yet the trial court here did just this when it found defendant in

civil and criminal contempt based in large part upon the same conduct—his failing to

return company property in willful violation of its TRO and preliminary injunction

orders.

 2
 STATE V. REVELS

 Elmore, J., dissenting

 The relevant provisions of both orders are identical except for paragraph

subheadings. The relevant paragraphs of the TRO provide:

 h. Defendant shall . . . take the following actions . . . as
 stated below:

 ....

 v. That all company-issued credit cards will be
 turned in and will not be used until and unless
 authorized by the Managers.

 i. Defendant shall . . . tak[e] the following actions within 24
 hours of the entry of this order:

 i. . . .[R]eturn to Company Headquarters . . . any and
 all [company] property, including . . . the items listed
 below:

 1. All office and other equipment purchased
 by or for the use of the Companies, including
 computers, tablets, phones, drones,
 audiovisual equipment, etc.;

 2. All hardcopy and electronic Company files;

 3. Keys and lock combinations to access
 Company property and equipment, including
 the Shelby Headend, Kings Mountain
 Headend, Simulsat, all runs completed or in
 progress (such as Ballantyne, Wake Forest,
 etc.), and other assets;

 4. All Company vehicles along with keys or
 fobs;

 5. All checkbooks, credit cards, and debit
 cards; and

 3
 STATE V. REVELS

 Elmore, J., dissenting

 6. All account, login and password access
 information.
 ....

 iii. . . . [H]ave all mail currently being delivered to
 [defendant’s] residential address or UPS or USPS
 boxes now be delivered to Company Headquarters[.]

 After the contempt proceeding, the trial court entered an order finding

defendant in both civil and criminal contempt simultaneously for his willful

noncompliance with its orders. In the criminal contempt section of its order, the trial

court made the following findings regarding defendant’s conduct:

 a. Defendant failed to cause the Plaintiffs’ mail to be
 delivered to Plaintiffs’ headquarters . . . as required by
 paragraph (i)(iii) of the TRO and [an identical paragraph]
 of the Preliminary Injunction;

 b. Defendant failed to deliver . . . equipment to Plaintiffs’
 headquarters . . . including but not limited to at least two
 phone devices . . . as required by paragraph (i)(i)(1) of the
 TRO and [an identical paragraph] of the Preliminary
 Injunction;

 c. Defendant failed to provide all account, login and
 password access information . . . as required by paragraph
 (i)(i)(6) of the TRO and [an identical paragraph] of the
 Preliminary Injunction; and,

 d. Defendant failed to relinquish the Plaintiffs’ credit card
 and debit cards as required by paragraphs (i)(i)(5) and
 (h)(v) of the TRO and [identical paragraphs] of the
 Preliminary Injunction.

(Emphasis added.) Based upon these findings, the trial court held defendant in

criminal contempt for willful noncompliance with the TRO and preliminary

 4
 STATE V. REVELS

 Elmore, J., dissenting

injunction:

 At all times relevant to this proceeding Defendant had the
 ability to comply with these provisions of the TRO and
 Preliminary Injunction and has willfully failed to do so in
 criminal contempt of this Court as set forth in N.C.G.S. §
 5A-11(a).

 In the civil contempt section of its order, the trial court made the following

findings regarding defendant’s conduct:

 a. Defendant’s instruction to third parties to break
 Plaintiffs’ fiber optic cables and re-splicing them upon
 renewal of a contract as illustrated in Plaintiffs’ Exhibit 12;

 b. Defendant’s actions in establishing through the North
 Carolina Secretary of State an LLC known as RST Wireless
 without the Plaintiffs’ knowledge and the engaging in both
 the purchase of equipment as well as exploration of
 utilizing Plaintiffs’ existing networks in Wake Forest,
 North Carolina in order to provide wireless communication
 services; and,

 c. Defendant’s failure to return certain of Plaintiffs’
 equipment (as listed in Plaintiffs’ Exhibit 12) as required by
 paragraphs (i)(i) of the TRO and (j)(i) of the Preliminary
 Injunction.

(Emphasis added.) Based upon these findings, the trial court held defendant in civil

contempt for willful noncompliance with the TRO and preliminary injunction:

 At all times relevant to this proceeding Defendant had the
 ability to comply with these provisions of the TRO and
 Preliminary Injunction and has willfully failed to do so in
 civil contempt of this Court as set forth in N.C.G.S. § 5A-
 21 . . . .

 As shown, the trial court’s order establishes that it found defendant in civil

 5
 STATE V. REVELS

 Elmore, J., dissenting

and criminal contempt for willful noncompliance with its orders based upon, in large

part, defendant’s same exact conduct—failing to return company property. Yet the

trial court punished defendant twice by imposing both civil and criminal contempt

sanctions. Although willful noncompliance with a court order may constitute either

criminal contempt under section 5A-11(a)(3), or civil contempt under section 5A-

21(a), a contemnor shall not be punished under both statutes based upon the same

conduct. See N.C. Gen. Stat. §§ 5A-12(d), -21(c). Accordingly, I agree with defendant

that, in violation of sections 5A-12(d) and 5A-21(c), the trial court improperly found

him in both criminal and civil contempt, and I would vacate the entire order.

 The majority, however, relies on our decision in Adams Creek Associates v.

Davis, 186 N.C. App. 512, 652 S.E.2d 677 (2007), to hold that the trial court here

properly punished defendant twice by imposing both forms of contempt for “distinctly

separate and discrete conduct.” I disagree with the majority’s expansive reading of

our holding in Adams Creek Assocs. and its application of the reasoning in that case

to support its holding in this case. The majority attaches significance to the fact in

that case that the contempt orders were “based upon the defendants’ trespass on the

exact same piece of land,” rather than the more relevant fact that the orders were

based upon separate, contemptible acts.

 In Adams Creek Assocs., we affirmed a trial court’s simultaneous civil and

criminal contempt adjudications against two trespassers over the exact same piece of

 6
 STATE V. REVELS

 Elmore, J., dissenting

land only because the defendants committed independently contemptible acts: (1)

willfully violating the court’s orders by continuing to live and otherwise trespass on

the property; and (2) displaying disparaging behavior during the contempt proceeding

by testifying that they intended to continue trespassing regardless of court orders

directing them otherwise. Adams Creek Assocs., 186 N.C. App. at 527, 652 S.E.2d at

687. In that case, the defendants were “charged with contempt of court for their

continued trespass on [particular] property following the entry of several court orders

directing them not to trespass thereon,” id., and, after the contempt proceeding, the

trial court entered two orders finding them in both civil and criminal contempt. Id.

at 520, 652 S.E.2d at 683.

 On appeal, we rejected the defendants’ argument that the trial court erred by

finding them in civil and criminal contempt for the same behavior because, in fact,

the sanctions were based upon separate, contemptible conduct. Id. at 526–27, 652

S.E.2d at 686–87. We observed that, during the contempt proceeding, the defendants

testified they “had in fact been living on the subject property or otherwise trespassing

on it” and “would not follow future court orders directing them to vacate the property.”

Id. at 527, 652 S.E.2d at 687. Thus, we explained, the “defendants were found in civil

contempt for failing to comply with the court’s [previous] order, and were found in

criminal contempt for their testimony threatening to disobey future orders of the

court.” Id. (emphasis added). Because the defendants “were found in civil and

 7
 STATE V. REVELS

 Elmore, J., dissenting

criminal contempt on the basis of different acts,” we rejected the defendant’s

argument and affirmed the trial court’s contempt adjudications. Id.

 To be sure, although the Adams Creek Assocs. decision does not specify which

criminal contempt ground enumerated in N.C. Gen. Stat. § 5A-11(a) applied to the

defendants, we can glean insight from the Adams Creek Assocs. Court’s discussion

addressing the trial court’s “misnomer” in finding the defendants in indirect, rather

than direct, criminal contempt:

 In the instant case, defendants testified in the trial court’s
 presence, constituting direct criminal contempt. However,
 the trial court mistakenly held them in indirect criminal
 contempt:

 The testimony of the Defendants stating that they
 are not going to obey the orders of the court is
 disrespectful and disparages the respect due to the
 court and its orders.

Id. at 528, 652 S.E.2d at 687; see also N.C. Gen. Stat. § 5A-11(a)(2) (“Willful behavior

committed during the sitting of a court in its immediate view and presence and

directly tending to impair the respect due its authority.”). Based on this discussion,

it is apparent that the defendants in Adams Creek Assocs. were being held in criminal

contempt not for willful noncompliance with a court order, as here, but for their

disparaging testimony. Thus, the contempt adjudications were based upon two

independently contemptible acts.

 Yet the majority relies on Adams Creek Assocs. to support its conclusion that

 8
 STATE V. REVELS

 Elmore, J., dissenting

defendant here was found in criminal and civil contempt for “distinctly separate and

discrete conduct based on a partially overlapping nucleus of facts.” In reaching this

conclusion, the majority points out that “both the civil and criminal contempt orders

were based upon the defendants’ trespass on the exact same piece of land” and

reasons that the defendants’ conduct differed in that one act was “the[ir] disobedience

of a past . . . order” and another act was “th[eir] intention to continue to disobey the

court’s orders.” Thus, in applying Adams Creek Assocs., the majority concludes:

 Here, it is readily apparent that, in accord with Adams
 Creek Assocs., the trial court found Defendant in civil
 contempt based on his continued conduct in violation of the
 TRO and preliminary injunction in attempting to frustrate
 RST’s business interests while simultaneously attempting
 to further his own at RST’s expense, and found him in
 criminal contempt based upon his past conduct, that is, his
 refusal to obey the trial court’s TRO and preliminary
 injunction in failing to adhere to their terms including the
 return of various company assets of RST.

(Emphasis added.) I disagree with this expansive reading of Adams Creek Assocs.

Adams Creek Assocs. held that a contemnor simultaneously may be found in civil and

criminal contempt at the same proceeding, provided he or she is punished for different

conduct. In my view, the emphasis should not be that both orders were “based upon

the defendants’ trespass on the exact same piece of land,” but that both orders were

based upon independently contemptible conduct—willful disobedience with a court

order and disparaging testimony threatening to disobey future court orders.

 Here, unlike the defendants in Adams Creek Assocs., defendant neither

 9
 STATE V. REVELS

 Elmore, J., dissenting

testified that he intended to retain plaintiffs’ property nor that he would disobey

future orders of the court. Unlike in Adams Creek Assocs., the record here does not

reveal two forms of contemptible conduct. Rather, the trial court’s order indicates

that it imposed both forms of contempt against defendant for willful noncompliance

with its orders, basing its decision, in large part, upon defendant’s failure to return

company property, see N.C. Gen. Stat. § 5A-11(a)(3) (“Willful disobedience of,

resistance to, or interference with a court’s lawful process, order, directive, or

instruction or its execution.”), which I believe runs afoul of our general statutes.

 Furthermore, the majority’s holding effectively nullifies the statutory

mandates that a party “shall not, for the same conduct” be punished for both civil and

criminal contempt, see N.C. Gen. Stat. §§ 5A-12(d), -21(c), as every party charged with

willful noncompliance of a court order whose only conduct was leaving uncorrected a

single directive in that order would nonetheless be subject to both criminal and civil

contempt, on the basis that past and continued violations of that order constitute

separate, contemptible conduct.

 Because the trial court here punished defendant twice by imposing both civil

and criminal contempt sanctions against him based, in large part, upon the same

exact conduct—violating its orders by failing to return company property—I believe

the trial court violated the statutory mandates prohibiting it from finding a party in

both forms of contempt for the same conduct. Therefore, I respectfully dissent.

 10